UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MISTY ANN COX,

                        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                        Defendant.

CASE NO.  C10-5021RBL

REPORT AND RECOMMENDATION

Noted for August 6, 2010

        This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261 (1976).  Plaintiff brings this action pursuant to 42

U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social

Security denying her applications for disability insurance and supplemental security income

benefits.

        After reviewing the record, the undersigned recommends that the Court remand the

administration's decision.  The ALJ adequately assessed plaintiff's residual functional capacity,

but erred in relying solely on the grids and failing to call a vocational expert to meet his burden

at step five.  If a claimant has moderate anger management problems, it is improper for the ALJ

to rely solely on the grids.  Therefore, vocational expert testimony is required.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born in November 1985. Tr. 21.  Plaintiff did not complete eleventh grade. Tr. 34.  Plaintiff was fired from jobs at Burger King and A&W because of difficulty working with customers, coworkers, or managers. Tr. 36-37.  In April 2005, plaintiff was diagnosed with bipolar disorder and personality disorder with cluster B features, "which indicate dramatic or erratic behavior and includes a classification of narcissistic personality." Tr. 16.  Plaintiff reported difficulty being around people and paying attention, difficulty getting along well with authority figures, and ability to follow instructions as long as they were short. Tr. 19.  Plaintiff filed an application for Supplemental Security Income benefits on February 24, 2006. Tr. 21.  Plaintiff alleged disability beginning January 1, 2003. Tr. 14.  Her application was denied initially and on reconsideration. Tr. 14. She requested a hearing, which was held September 3, 2008, and on September 23, 2008, the administrative law judge ("ALJ") issued a decision finding that plaintiff was not disabled, denying plaintiff's application. Tr. 14-24.  Specifically, the ALJ determined:

(1) at step one of the sequential disability evaluation process, plaintiff has not engaged in substantial gainful activity since February 24, 2006;

(2) at step two, plaintiff has "severe" impairments consisting of bipolar disorder, personality disorder, and post traumatic stress disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with certain non-exertional limitations;

(5) at step four, plaintiff had no past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant

numbers in the national economy.

Tr. 16-21.

Plaintiff timely filed this appeal.  Plaintiff requested review of the ALJ's decision by the Administration's Appeals Council, but it denied the request (Tr. 1-4), making the ALJ's decision the final Agency decision. 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff now seeks judicial review of the administrative decision.  Plaintiff is seeking remand of the matter to the administration for further consideration, raising the following two issues:

(1)  Whether the ALJ's residual functional capacity assessment adequately describes or addresses plaintiff's limitations in social functioning given her testimony and the medical evidence, and

(2)  Whether the ALJ was required to call a vocational expert to meet his burden at step five of the sequential evaluation process if he found plaintiff had the residual functional capacity to perform only simple routine work with limited social contact. (Tr. 18, Reply Brief 1).

Defendant asserts that the denial of plaintiff's application for benefits is properly supported by substantial evidence and free of any legal error. Defendant's Brief 4, 10. Defendant asks the court to affirm the administrative decision. Defendant's Brief 15.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir.

REPORT AND RECOMMENDATION - 3

2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th

Cir. 1989).

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d

1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  If the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social

Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

citations omitted).  The Act defines disability as the "inability to engage in any substantial

gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for

a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Plaintiff is disabled under the Act only if her impairments are of such severity that she is unable

to do her previous work, and cannot, considering her age, education, and work experience,

engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>DISCUSSION</u>

**A.**     ***The ALJ Properly Considered Plaintiff's Residual Functional Capacity***

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998);

Andrews, 53 F.3d at 1043 ("[c]redibility determinations are the province of the ALJ").  If the

medical evidence in the record is not conclusive, "questions of credibility and resolution of

conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

1999).  The ALJ may also draw inferences "logically flowing from the evidence." Id. at 642.  An

ALJ is not "required to believe every allegation of disabling pain" or other non-exertional

impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent

reasons." Reddick, 157 F.3d at 722. If an ALJ discredits a claimant's subjective symptom

testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464

F.3d 968, 972 (9th Cir. 2006); Lester v. Chater, 81 F.3d 821 (9th Cir. 1996) ("For the ALJ to

reject the claimant's complaints, she must provide 'specific, cogent reasons for the disbelief.'").

When evaluating a claimant's credibility the ALJ "must specifically identify what testimony is

not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972

(internal quotation omitted).  General findings are insufficient. Reddick, 157 F.3d at 722;

Smolen, 80 F.3d at 1284.  The ALJ may consider "ordinary techniques of credibility evaluation,"

including the claimant's reputation for truthfulness, inconsistencies in testimony or between her

testimony and conduct, daily activities, work record, and the testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which she complains.

Smolen, 80 F.3d at 1284.

The ALJ reviewed the testimony to support plaintiff's residual functional capacity.  In

discounting plaintiff's credibility, the ALJ wrote:

> After considering the evidence of record, I find that the claimant's medically
> determinable impairments could reasonably be expected to produce some of the
> alleged symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible to the extent

they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant's report of daily activities does not support disability to the extent she alleged. For example, on the Function Report, the claimant stated that she has no difficulty with personal care, she cooks, does household chores, including cleaning, laundry and yard work, and she is able to walk or use public transportation to get around (Ex. 1E). The claimant has described daily activities which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.

In addition, the claimant reported occasional difficulty being around people and paying attention. However, she indicated that she could follow instructions well, so long as they were short instructions, and although she does not get along well with authority figures, she would be capable of working when contact with others is limited (Ex. 1E). This level of functioning is consistent with the residual functional capacity detailed above, and it would not preclude all work activities.

I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

Tr. 19.

Plaintiff argues that "[t]he ALJ's determination that Plaintiff could perform work requiring 'limited social contact' is not sufficiently clear or specific for the Court [to] determine whether the ALJ properly considered plaintiff's testimony and the medical evidence." Reply Brief 2.  The undersigned disagrees.

The ALJ found that there was a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. Tr. 16.  Therefore, the ALJ's evaluation of plaintiff's credibility turns on whether the ALJ properly discounted claimant's testimony as to the severity of symptoms.  The record supports the ALJ in finding that plaintiff's report of daily activities does not support the alleged degree of limitation. See Tr. 33, 40, 41, 44, 45, 49, 93-96. The fact that plaintiff's impairments do not cause difficulty in performing these activities is a specific, clear and convincing reason to discount her testimony.  See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (the ALJ properly found claimant's subjective pain complaints

were not credible because, in part, claimant remained able to perform ordinary household and personal tasks, thus claimant "failed to carry his burden of proving that his pain prevents him from returning to his former job").  The ALJ also noted that, by plaintiff's own admission, she is able to follow instructions, as long as they are short. Tr. 19, 98.

The ALJ appropriately weighed plaintiff's testimony and found that her limitations were not as severe as she claimed.  As noted above, credibility findings are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043.  The ALJ provided specific and cogent reasons in the record for discounting plaintiff's testimony. Reddick, 157 F.3d at 722.  After considering the arguments, the undersigned finds that the ALJ properly evaluated plaintiff's credibility.

Nonetheless, the ALJ is still required to properly evaluate the medical evidence in order to determine plaintiff's residual functional capacity.  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, 157 F.3d at 722.  If the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample, 694 F.2d at 642.  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  Id. at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester, 81 F.3d at 830.  Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

However, the ALJ "need not discuss all evidence presented" to him. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d at 957; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.  The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

Plaintiff argues that the ALJ did not address the medical evidence with sufficient clarity in making his residual functional capacity assessment. Reply Brief 4.  Plaintiff further argues that the ALJ failed to address all of the statements in the medical evidence. Reply Brief 4 (citing Tr. 509).  The undersigned disagrees.

The ALJ relied on specific medical evidence to discount the opinion that plaintiff's limitations were "marked." Tr. 19-21.  The ALJ wrote:

> As previously mentioned, the claimant underwent evaluations with Dr. O'Leary in June and December of 2007. Based on the claimant's performance during the

1
2
3

interviews and evaluations, Dr. O'Leary assigned the claimant a global assessment of functioning (GAF) score of 60, which is indicative of only moderate psychological symptoms or moderate difficulty in social, occupational or school functioning.

4
5
6
7

In addition, Dr. O'Leary observed an excellent level of functioning with her regard to her children and suggested that the prior diagnosis of bipolar disorder may be more accurately described as PTSD and borderline and narcissistic personality traits. The goal of Dr. O'Leary's evaluation was to determine if the claimant would be capable of regaining custody of her children. He concluded that, based on test results, the claimant displayed no significant symptoms of major mental illness, and she would be capable of caring for them (Ex. 19F).

8
9
10
11
12

Although the focus of Dr. O'Leary's evaluations was not the claimant's ability to work, but rather care for her children, it is given great weight in determining the claimant's residual functional capacity. The claimant's ability to care for her children is closely aligned with her ability to return to work, because caring for young children, like the claimant's daughters, can be quite demanding both physically and emotionally. If claimant's mental limitations would not prevent her from caring for her children, then she would be capable of activities consistent with the residual functional capacity outlined above.

13
14
15
16
17
18

William F. Hiltz, M.D., a psychiatrist at Kitsap Mental Health Services noted that in his opinion, the claimant was not disabled as a result of any psychiatric pathology beyond her own characterologic stance towards authority figures, and that he would not support an application for disability if he was asked to do so (Ex. 8F/23-24). Dr. Hiltz's opinion is consistent with the treatment records, as well as the evaluation of Dr. O'Leary. While the claimant does have some psychological problems, which would benefit from mental health treatment, the evidence does not show that these problems leave her unable to work and completely disabled.

19
20
21
22
23
24

The record also contains Department of Social and Health Services evaluations, which were completed by Norma Brown, Ph.D., in November 2005 and October 2007. On both of these evaluations, Dr. Brown indicated that the claimant had moderate to marked psychological symptoms which included, but were not limited to, depressed mood, expressions of anger, motor retardation, and social withdrawal. As a result of the severity of these symptoms, Dr. Brown then noted that the claimant had marked limitations in many areas of social functioning, and moderated to marked limitations in many areas of cognitive functioning (Ex. 3F, 17F).

25
26

I accord no significant weight to Dr. Brown's opinions. There are no objective test results in the claimant's medical record that support this level of limitation. In fact, the attached checklist of the claimant's reported symptoms is unremarkable and inconsistent with such extreme functional limitations. It is also problematic

that Dr. Brown's evaluation was conducted to assist the claimant in qualifying for public assistance benefits, and Dr. Brown may have been sympathetic to the claimant, since there are no objective findings anywhere in the record that support this level of limitation. Accordingly, I give little weight to the opinion of Dr. Brown.

Bruce Eather, Ph.D., evaluated the claimant's medical record for the State Disability Determination Services. He also concluded that the claimant was 'not disabled' as a result of her mental impairments and she would be capable of performing simple routine work with limited social contact. The conclusion was based on a thorough review of the claimant's medical record which included the evaluations with Dr. O'Leary and Dr. Hiltz, as well as treatment notes from Kitsap Mental Health (Ex. 4F). Although Dr. Eather did not have the opportunity to evaluate the claimant personally, his opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach a similar conclusion. Therefore, I give great weight to Dr. Eather's assessment.

Finally, the lay opinion evidence from Tiarra Spates supports the claimant's allegations. However, because this opinion is largely based on the claimant's self-report to the witness and it is not consistent with the medical evidence of record, I accord it little weight.

Tr. 7-8.

The ALJ is entitled to resolve conflicts in the medical evidence. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts. <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983).  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." <u>Lester</u>, 81 F.3d at 831.  In <u>Magallanes v. Bowen</u>, the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a non-examining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining

physicians and on testimony from the claimant that conflicted with the treating physician's

opinion. 881 F.2d at 751-55.

Here, the ALJ supported his findings by referencing Dr. Michael O'Leary's opinion that

the plaintiff's ability to care for her children shows that she "would be capable of activities

consistent with the residual functional capacity" of "only moderate psychological symptoms or

moderate difficulty in social, occupational or school functioning." Tr. 20.  The ALJ also noted

the opinion of William F. Hiltz, M.D., that the plaintiff's psychological problems do not "leave

her unable to work and completely disabled." Tr. 20.  The ALJ's also provided detailed reasons

for rejecting Dr. Brown's evaluation and opinions, which demonstrates that he took them into

consideration in his decision. Tr. 7-8.  The ALJ is not required to reference every medical record,

so long as he considered specific evidence to properly discount a non-examining medical

opinion.  Sousa, 143 F.3d at 1244.

The ALJ addressed Dr. Brown's opinion in his decision. Tr. 20.  He stated that it was an

opinion based on a "checklist of the claimant's reported symptoms", and "inconsistent with such

extreme functional limitations." Tr. 20.  Dr. Brown's opinions were provided in check-box forms

with minimal narrative. Tr. 222-28.  A treating physician's opinion may be discounted if it

contains checkbox assessments without sufficient narrative to explain the basis for the opinion.

Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ, however, permissibly rejected

them because they were check-off reports that did not contain any explanation of the bases of

their conclusions."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d at 1195.

In addition, the record supports the ALJ's finding that Dr. Brown's opinion should be

discounted because it is largely based on plaintiff's subjective complaints. Tr. 229-31.  The

administration may reject a physician's opinion predicated upon reports of a claimant found not

1 credible. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ properly

2 discounted Dr. Brown's opinion to the extent it was based on plaintiff's non-credible reports.

3 The ALJ relied on "specific and legitimate reasons" supported by substantial evidence provided

4 by qualified medical experts in evaluating the credibility of plaintiff's limitations. <u>Murray v.

5 Heckler</u>, 722 F.2d at 502.

6        Taken as a whole, the ALJ points to specific, legitimate medical evidence to show that

7 plaintiff's residual functional capacity is inconsistent with the opinion express by Dr. Brown. Tr.

8 20-21.  The ALJ's reliance on medical evaluations in granting "no significant weight" to Dr.

9

10 Brown's opinion was sufficient. Tr. 20.  In sum, the ALJ properly evaluated the medical opinion

11 evidence.

12 **B.        The ALJ Improperly Relied on the Medical-Vocational Guidelines**

13        At step five of the administrative process the burden of proof shifts to the Commissioner

14 to produce evidence of other jobs existing in significant numbers in the national economy that

15

16 plaintiff could perform in light of his age, education, work experience, and residual functional

17 capacity.  <u>See</u> <u>Tackett v. Apfel</u>,180 F.3d at 1099; <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir.

18 1995).  In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden

19 of showing that there is other work in 'significant numbers' in the national economy that

20 claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the

21

22 Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2."  <u>Id</u>.

23        The ALJ did not use a vocational expert and, instead, relied solely on the Guidelines

24 ("the grids") to perform his step-five evaluation.

25        The Guidelines present, in *table form,* a short-hand method for determining the
      availability and numbers of suitable jobs for a claimant. These tables are commonly
26      known as "the grids." The grids categorize jobs by their physical-exertional requirements
      and consist of three separate tables-one for each category: "[m]aximum sustained work

capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, ... the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.

Tackett, 180 F.3d at 1101 (emphasis in original).

At step five, the Medical-Vocational Guidelines ("the grids") may be used to direct a finding if all the findings in four categories (age, education, work experience, and exertional level) match a claimant's qualifications. Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007). If the grids do not match all of the claimant's qualifications, the Commissioner may use them as a framework to make a determination of what work exists. Id. The grids can be used if there are both exertional and non-exertional limitations present. Id. "[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." Id. at 1076 (finding that mild or moderate depression does not establish a "sufficiently severe non-exertional limitation" to preclude reliance on the grids at step five).

Plaintiff argues that the ALJ erred in relying solely on the grids to make his determination at step five and, instead, should have called a vocational expert to meet his burden. Reply Brief 6. Plaintiff argues that the ALJ improperly relied on the grids in finding that the occupational base for unskilled work "has not been significantly eroded by [her] non-exertional limitations." Tr. 22. Plaintiff argues that the ALJ's reliance on Social Security Ruling 85-15 did not appropriately consider that unskilled work in the medical vocational rules "involves 'dealing primarily with objects, rather than [data] or people.'" Reply Brief 7 (citing SSR 85-15). Further, plaintiff argues that the ALJ did not appropriately address the portion of the same ruling which indicates that the "basic mental demands" of unskilled work include "respond[ing] appropriately to supervision, coworkers…." Reply Brief 7 (citing SSR 85-15). This court agrees.

The grids are a matrix system for handling claims that involve substantially uniform levels of impairment. See 20 C.F.R. pt. 404, subpt. P, app 2; Tackett at 1101.  This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Medical-Vocational Guidelines).

This court was recently confronted with a similar question in Woodsum v. Astrue. 2010 WL 1849209 (W.D.Wash. 2010). There, the ALJ performed his evaluation of the number of jobs in the national economy by relying solely on the grids to find that the plaintiff in that case was not disabled. Id. at 22. This district remanded the ALJ's decision for further administrative proceedings on the grounds that the claimant's nonexertional limitations did not comport with the demands of unskilled work. Id. at 24-25. The undersigned finds the reasoning in Woodsum persuasive in this case.

As in Woodsum, this court is again confronted with a claimant whose nonexertional limitations impair her ability to interact with others. See Tr. 16, 2010 WL 1849209 at 24.  At step-two of the administration's evaluation process, the ALJ determined that the plaintiff suffers from the following severe impairments: bipolar disorder, personality disorder, and post traumatic stress disorder. Tr. 16 (citing 20 CFR 416.920(b) and 416.971 et seq.).  As a result of these mental impairments, the ALJ found that plaintiff had mild non-exertional limitations in activities of daily living, moderate non-exertional limitations in social functioning, and moderate difficulties "with regard to concentration, persistence or pace." Tr. 17-18.  Nevertheless, the ALJ did not take testimony from the vocational expert present at the hearing, and instead applied the grids to find plaintiff not disabled.  The ALJ reasoned that application of the grids was not

REPORT AND RECOMMENDATION - 14

precluded because the "claimant's limitations would not have a significant effect on claimant's ability to perform unskilled work." Tr. 22.

In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy.  Use of the grids at step five is justified if they

> *completely and accurately* represent a claimant's limitations.... In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

> When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations…. the grids are inapplicable and the ALJ must take the testimony of a [vocational expert].

Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (*citing* Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989)).

Here the ALJ did not find that the plaintiff suffers from exertional impairments, thereby precluding a finding of disability on the basis of exertional limitations. See Cooper, 880 F.2d at 1156.  If a claimant's exertional limitations are insufficient to reach a conclusion of disability, then

> the ALJ must use the grids as a 'framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.' ... In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the [nonexertional] impairment.

Woodsum, 2010 WL 1849209 at 23 (W.D.Wash. 2010) (*quoting* Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (emphasis added) (internal citations and footnotes omitted)).

The ALJ relied on the reasoning in Hoopai to obviate the need to call a vocational expert. The ALJ wrote:

In <u>Hoopai</u>, the Court held that moderate limitations in the ability to maintain attention and concentration for extended periods, in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, and the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, were not sufficiently severe non-exertional limitations to require vocational expert testimony. These limitations, the court held, did not significantly erode the occupational base of jobs set out in the Medical-Vocational guidelines.

Tr. 22.

The holding in <u>Hoopai</u> is inapplicable in this case. In <u>Hoopai</u>, the claimant asserted that the ALJ's determination at step two, that the claimant's combination of exertional and nonexertional impairments was severe, should have directed a finding of disability at step five.

In this case the severity of the ALJ's finding at step two is not at issue in this case.  At issue is whether the ALJ had substantial evidence, relying solely on the grids, to appropriately determine the existence of a significant number of jobs in the national economy that the plaintiff is able to do in light of her nonexertional limitations.

The ALJ's determination that plaintiff's limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" speculates about the base of unskilled work without supporting this with evidence from the record. Tr. 22.  This court agrees with plaintiff that SSR 85-15 "indicates that the jobs recognized by the medical vocational guidelines require the ability to respond appropriately to supervision and co-workers." Reply Brief 7.  The ALJ's residual functional capacity assessment determined that the plaintiff "can perform only simple routine work with limited social contact." Tr. 18. On its face, this limitation conflicts with the "basic mental demands of competitive, remunerative, unskilled work" in SSR 85-15, which "include the abilities (on a sustained basis).... to respond appropriately to supervision, coworkers, and usual work situations." SSR 85-15.  Here, the grids do not

REPORT AND RECOMMENDATION - 16

1    "completely and accurately represent" plaintiff's limitations.  Therefore, the ALJ was required to

2    take vocational expert testimony.

3           Because the court finds that the ALJ's reliance on the grids was improper, the ALJ was

4    under an obligation to hear the testimony of a vocational expert, and there is a need to remand on

5    that basis for further fact-finding.  It is necessary for the ALJ to take the testimony of a

6    vocational expert to determine the type of work, if any, that the plaintiff is capable of

7    performing.

8
                                        CONCLUSION
9
            Based on the foregoing discussion, the Court should remand the matter to the
10
     administration for further administrative proceedings.
11
            Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure,
12
     the parties shall have ten (14) days from service of this Report to file written objections.  See
13
     also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for
14
     purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit
15
     imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 6,
16
     2010, as noted in the caption.
17
            DATED at this 8th day of July, 2010.
18

19

20

21
                                        _____
22                                      J. Richard Creatura
                                        United States Magistrate Judge
23

24

25

26


REPORT AND RECOMMENDATION - 17